UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

FRANKLIN H. DAVIS, JR.,

                Plaintiff,

   -against-                                          1:12-CV-1561 (LEK)

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

_____

## **MEMORANDUM-DECISION and ORDER**

**I.    INTRODUCTION**

Before the Court is an action for judicial review of the Commissioner of the Social Security Administration's ("SSA") final denial of Plaintiff Franklin H. Davis, Jr.'s ("Plaintiff") application for supplemental security income ("SSI") benefits. Both parties have filed briefs. Dkt. Nos. 10 ("Plaintiff's Brief"); 11 ("Defendant's Brief"). For the following reasons, the Court affirms the Commissioner's decision.

**II.    BACKGROUND**

    **A.  Factual History**

Plaintiff was incarcerated in 1998 after supporting himself for eight years selling drugs. Dkt. No. 8 ("Record") at 258-60.[1] Plaintiff first sought treatment for, and was formally diagnosed with, chronic depression in 2000.[2] R. at 258. However, he asserts that his depression began after his mother's alcohol-related death in 1979. Id. Plaintiff recalls being prescribed trazodone and

---

[1] Citations to the Record are to the pagination assigned by SSA. On ECF, the Record appears in seven parts as Docket Numbers 8-1 through 8-7.

[2] The Record contains no medical records of this treatment.

Wellbutrin and being referred to outpatient individual and group therapy. Id. Plaintiff responded positively to the treatment. Id. He found employment in 2002 and worked for about a year as a certified nursing assistant at a nursing home in Utica, New York; it was the first job that he had held since 1990. Id. at 258-260. However, during his employment he relapsed into cocaine and alcohol dependence. R. at 259. His addiction continued until his incarceration in federal prison in 2005, where he again received mental health treatment. Id. During the last four years of Plaintiff's incarceration, he worked a food service position in the prison mess hall. Id. The position was "low stress" and in a "controlled environment." Id.

Shortly after Plaintiff's release, he relapsed into substance use and then entered Hospitality House, a halfway house rehabilitation program. R. at 367-68. Hospitality House assigned Plaintiff to group therapy classes as well as five-hour "job functioning" shifts everyday. Id. Although Plaintiff was able to carry out these five-hour shifts without issue, his therapist and social worker at Hospitality House opined that Plaintiff likely could not handle significant additional responsibility. R. at 368. Plaintiff became easily distracted and overwhelmed when assigned organized tasks, such as learning how to use a computer. Id. Hospitality House referred Plaintiff for additional psychiatric treatment after "a number of 'clean' months in treatment." Id.

However, Plaintiff's psychiatrist, Dr. Janay Fake, denies that Plaintiff's work ability is significantly impaired when his depression and substance use are appropriately managed. R. at 397-409. Dr. Fake treated Plaintiff following his referral from Hospitality House and filled out a mental residual functional capacity assessment ("RFC"). Id. Dr. Fake found Plaintiff's diagnosed "major depressive disorder, recurrent, moderate in partial remission" not to "affect his ability to understand, respond to and act on requests by supervisors or co-workers." R. at 398-400. Dr. Fake stated

2

Plaintiff's recent substance abuse would not affect his ability to engage in gainful employment. R. at 399. However, "with prolonged abstinence, substance use would no longer be a contributing factor in Plaintiff's ability to maintain employment." R. at 400.

Dr. C. Butensky also prepared a Psychiatric Review Technique ("PRT") and mental RFC as a consultative examiner. In the PRT, Dr. Butensky listed Plaintiff's impairments as ranging between "mild" and "moderate,"[3] with no repeated episodes of deterioration. R. at 283. Based on his interview with Plaintiff, Dr. Butensky concluded that Plaintiff was able to do simple repetitive work in a low-contact setting. R. at 285. Likewise, on the RFC, which further breaks down areas of potential impairment, Dr. Butensky identified Plaintiff's limitations as "not significant" or "moderate" in all respects. R. at 287-88.

Plaintiff also underwent an internal medicine examination by consultative examiner Dr. George Alexis Sirotenko. R. at 291-94. Dr. Sirotenko noted that Plaintiff's prognosis was "fair" and that Plaintiff suffered no significant physical limitations. R. at 293. However, Dr. Sirotenko did note that Plaintiff has some arthritis in his knees, as well as a history of Hepatitis C, which is currently controlled and being treated. R. at 291-93, 371-76.

**B. The Commissioner's Decision**

The ALJ concluded that Plaintiff has not engaged in substantial gainful activity since March 16, 2009, and has the following severe impairments: osteoarthritis; history of hepatitis C; depressive disorder; and substance use disorder. R. at 14-17. The ALJ found Plaintiff not to have an impairment or combination of impairments that meets or medically equals one listed in 20 C.F.R. §

---

[3] As per the PRT form, only "marked" or "extreme" limitations satisfy the functional criteria for disability benefits.

3

404(P), Appendix 1, due to a lack of findings establishing that the Plaintiff is subject to advanced functional limitations necessary to meet any pertinent listing. R. at 17. The ALJ further found that although Plaintiff retains the physical RFC to perform medium work activity, his occupational base is eroded by nonexertional limitations including an inability to regularly sustain concentration, persistence, or pace. R. at 18-22. However, the ALJ found Plaintiff's diminished RFC to be a result of substance use and that, if Plaintiff were not using these substances, Plaintiff's RFC would allow him to resume past employment or a full range of other medium work activity. Id. The ALJ therefore found Plaintiff not to be disabled because his substance use disorder is a contributing factor material to the determination of disability, see 20 C.F.R. 416.935. R. at 22.

### C. Procedural History

Plaintiff filed an application for Title XVI SSI benefits on April 20, 2009, alleging a period of disability beginning on January 30, 2009. R. at 134-40. After an initial denial of Plaintiff's application and a hearing, Administrative Law Judge ("ALJ") Arthur Patane denied the application. R. at 9-27. The Appeals Council denied Plaintiff's request for review on August 27, 2012, rendering ALJ Patane's decision the final decision of the Commissioner. R. at 1-4. The present action ensued.

### III. LEGAL STANDARD

#### A. Standard of Review

In reviewing an SSA decision, a court's role is to determine whether the ALJ's findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); Featherly v. Astrue, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might

4

accept as adequate to support a conclusion." Consol. Edison Co. of New York v. Nat'l Labor Relations Bd., 305 U.S. 197, 229 (1938). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. Featherly, 793 F. Supp. 2d at 630. The reviewing court should not affirm an ALJ's decision if it reasonably doubts that the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986. If the ALJ applied the correct legal standards, the decision must be upheld if the evidence is deemed to be susceptible to more than one rational interpretation, and must be sustained "even where substantial evidence may [also] support the plaintiff's position." Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); see also Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). The reviewing court may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). It must afford the SSA's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

**B. Title XVI SSI**

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 423(d)(1)(a). Moreover, a plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in

5

the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

In determining whether a plaintiff has a disability, the Commissioner applies a five-step process. See 20 C.F.R. §§ 404.1520 and 416.920. Moreover, "[i]f at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003). The five-step process is as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If [she] is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [she] has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

Bush v. Shalala, 94 F.3d 40, 44-45 (2nd Cir. 1996) (citations omitted). The plaintiff bears the burden of proof with regard to the first four steps; the Commissioner bears the burden at the fifth step. Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008).

## IV. DISCUSSION

The ALJ found that, although Plaintiff would otherwise have the capacity for medium work, non-exertional limitations including substance abuse disorder warranted finding Plaintiff disabled. R. at 20-23. If Plaintiff ceased his substance abuse, however, his remaining functional limitations

6

would not allow a finding of disability pursuant to 42 U.S.C. § 1382c(a)(3)(J). R. at 22. The ALJ accordingly found that the Plaintiff's substance abuse was a material factor in his disability determination and denied benefits. R. at 23.

"When there is medical evidence of an applicant's drug or alcohol abuse, the 'disability' inquiry does not end with the five-step analysis." Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 123 (2d Cir. 2012); See 20 C.F.R. § 416.935(a). The codification of 42 U.S.C. § 1382c(a)(3)(J) amended the Social Security Act's definition of "disabled" to exclude conditions materially caused by drug addiction or alcoholism. Cage, 692 F.3d at 124. A claimant "shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the [plaintiff] is disabled." Id. at 123. The claimant bears the burden of proving the immateriality of their drug addiction or alcoholism as they pertain to the ALJ's disability determination. Id. Where a claimant's remaining limitations would not be disabling, her drug addiction or alcoholism is deemed to be a materially contributing factor in the plaintiff's determination of disability. 20 C.F.R. § 416.935(b)(2)(I). An ALJ determines the materiality of a plaintiff's drug addiction or alcoholism primarily on the basis of whether would still be able to be found disabled if they were to cease their use of the drug or alcohol. 20 C.F.R. § 416.935(b)(1). The ALJ "will evaluate which of [the plaintiff's] current physical and mental limitations, upon which [the ALJ] based [their] disability determination, would remain if [the plaintiff] stopped using drugs or alcohol and then determine whether any or all of [the plaintiff's] remaining limitations would be disabling." 20 C.F.R. § 416.935(b)(2).

The Plaintiff bears the burden of proving the immateriality of his drug addiction, see Cage, 692 F.3d at 123, and the Court finds that the ALJ properly considered available record evidence in

determining that Plaintiff would not be disabled absent substance dependence.  See R. at 21.  While in rehabilitation, Plaintiff completed daily five-hour shifts of "job functioning" without issue.  Id.  The doctors at the facility opined that Plaintiff's "substance abuse/dependence affected his ability to participate in gainful employment."  Id.  To the extent that Plaintiff's challenge to the ALJ's findings relies on Plaintiff's continued diminished RFC after the hearing, the ALJ could not have known this information when she made her decision.  See Pl.'s Br. at 11-12.  Although such information might allow Plaintiff to succeed on a new application for benefits, the ALJ reasonably concluded, based on substantial evidence, that Plaintiff's substance abuse contributed to his diminished RFC, particularly in light of Plaintiff's burden to prove otherwise.

Furthermore, the ALJ properly found that Plaintiff's exertional disabilities not to significantly limit Plaintiff's capacity to work.  In making an RFC determination, the ALJ must assess all of the relevant medical and other record evidence, as well as the claimant's testimony provided by concerning any "limitations that result from [the plaintiff's] symptoms, such as pain."  20 C.F.R. § 416.945(a)(3).  The ALJ considers the claimant's "ability to meet the physical, mental, sensory, and other requirements of work."  Id. § 416.945(a)(4).  Concerning physical abilities, the ALJ should weigh "the nature and extent of [a claimant's] physical limitations and then determine [her] residual functional capacity for work activity on a regular and continuing basis."  Id. § 416.945(b).  "A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . may reduce [a claimant's] ability to do past work and other work."  Id.

The ALJ properly considered record evidence of Plaintiff's physical limitations.  The ALJ specifically mentioned the x-ray and treatment notes that revealed Plaintiff's bilateral knee pain and

previous diagnosis of osteoarthritis. R. at 15. The ALJ further reviewed the findings of Dr. Sirotenko, which stated that Plaintiff's "examination findings were within normal limits and [Plaintiff] did not have any frank physical limitations." R. at 16. The ALJ concluded that the Plaintiff had the physical RFC to perform medium work. That conclusion was supported by substantial evidence: Plaintiff's only significant exertional limitation was some chronic fatigue due to Plaintiff's hepatitis C and an inability to engage in heavy lifting. R. at 18-22. Therefore, the ALJ did not err in finding Plaintiff to be able to engage in medium work activity absent substance use.

The Court has reviewed the remainder of the ALJ's findings, concludes that the decision was based on substantial evidence, and therefore affirms.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Commissioner's Decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties to this action.

**IT IS SO ORDERED**.

DATED:  March 31, 2014
        Albany, New York

Lawrence E. Kahn
U.S. District Judge